UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARO C. WEILBURG,

                               Plaintiff,

                                                 5:22-cv-435
v.                                           (BKS/TWD)

JOHN S. RODGERS, ETHAN C.
KOSS, NORMAN BUTTON,
JANE DOE, and JOHN DOE,

                               Defendants.
_____

APPEARANCES:

DARO C. WEILBURG
Plaintiff, *pro se*
4899 Bear Path Road
Munnsville, NY 13409

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### REPORT-RECOMMENDATION AND ORDER

       On May 4, 2022, Daro C. Weilburg ("Plaintiff"), proceeding *pro se*, filed a Complaint

against John S. Rodgers, Ethan C. Koss, Norman Button, Jane Doe, and John Doe.  (Dkt. No.

1.[1])  Plaintiff simultaneously moved to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)  Having

reviewed Plaintiff's motion to proceed IFP, the undersigned GRANTS the motion.  *See id.*  For

the reasons discussed below, the undersigned recommends that the Court conclude Plaintiff's

first cause of action survives initial review under 28 U.S.C. § 1915(e) and requires a response.

(*See* Dkt. No. 1.)  The undersigned further recommends that the Court dismiss Plaintiff's second

cause of action with leave to amend.  *See id.*

_____

[1] On the same day, May 4, 2022, Weilburg and his wife, Maria T. Weilburg, filed another
complaint.  *See* Case No. 5:22-cv-432-DNH-ATB, Dkt. No. 1.

## I.    SUMMARY OF THE COMPLAINT

Invoking this Court's jurisdiction under 28 U.S.C. § 1331, Plaintiff appears to assert two causes of action under 28 U.S.C. § 1983.  (*See* Dkt. No. 1.)  Through what appears to be the first cause of action, Plaintiff claims New York State Trooper Ethan C. Koss "knowingly and intentionally placed [him] under arrest under false pretenses."  *Id.* at 5.  On March 12, 2022, Trooper Koss arrested Plaintiff for criminally trespassing on the property of Richard Castellane. *See id.*; *see also* Dkt. No. 1-1 at 1.  According to Plaintiff, Trooper Koss "knew Richard Castellane and Norman Button provided false information" in support of the arrest but arrested him anyway because "Koss was driven by his personal relationship with Norman Button."  (Dkt. No. 1 at 5.)  Plaintiff further alleges Trooper Koss arrested him and charged him "with a Class A Misdemeanor of being a Jehovah's Witness."  *Id.* at 8.

Through what appears to be the second cause of action, Plaintiff claims John S. Rodgers, the Assistant District Attorney for Stockbridge Township, County of Madison, is engaged in malicious prosecution.  *Id.* at 7-8.  According to Plaintiff, ADA Rodgers has no evidence to support the charge of criminal trespass, has failed to honor his discovery obligations, and is prosecuting Plaintiff "because [he is] a Jehovah's Witness."  *Id.*

Plaintiff does not appear to advance any causes of actions against the other individuals named in the caption of his Complaint.  *See generally id.* at 1-8.

## II.    STANDARD OF REVIEW

This Court must conduct an initial review of complaints filed *in forma pauperis*, and "complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government).

When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir 1999) (applying Section 1915A).[2]

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This

---

[2] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## III.    SUFFICIENCY OF THE COMPLAINT

Construing Plaintiff's *pro se* pleading liberally, the undersigned concludes Plaintiff has stated a claim for false arrest but has failed to state a claim for malicious prosecution. *See Sealed Plaintiff*, 537 F.3d at 191. First, "[t]o establish a false arrest or imprisonment claim under either New York State law or section 1983, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Albergottie v. New York City*, No. 08 CIV. 8331 (SHS), 2011 WL 519296, at *7 (S.D.N.Y. Feb. 15, 2011); *see also Arrington v. City of New York*, No. 14-CV-3023 (ARR) (VMS), 2014 WL 11350821, at *3 (E.D.N.Y. Dec. 22, 2014). "The existence of probable cause is a complete defense to a

Section 1983 claim for false arrest, and constitutes justification for the arrest." *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 284-85 (E.D.N.Y. 2018); *see also Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013); *see generally Arrington*, 2014 WL 11350821, at *3-4 (discussing the "two limited scenarios . . . in which an individual's claim of innocence or assertion of a defense will negate probable cause."). Moreover, "[i]f, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally would be conclusive evidence of probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986).

Construing Plaintiff's allegations liberally and taking his factual allegations as true, the undersigned concludes Plaintiff's first cause of action for false arrest survives initial review. *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff alleges that on March 12, 2022, "Trooper Koss knowingly and intentionally placed [him] under arrest under false pretenses." (Dkt. No. 1 at 5.) According to Plaintiff, "Trooper Koss knew Richard Castellane and Norman Button provided [him] with false information" about the alleged trespass, but Trooper Koss arrested him anyway. *Id.* The undersigned accordingly recommends that the Court conclude Plaintiff's false arrest claim against Trooper Koss survives initial review under 28 U.S.C. § 1915(e) and requires a response. In so recommending, the undersigned expresses no opinion regarding whether the claim could survive a properly filed motion to dismiss or motion for summary judgment.

Second, "[t]o state a § 1983 claim for malicious prosecution, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Ramos v. City of New York*, No. 1:18-CV-04938 (ALC), 2020 WL 4041448, at *5 (S.D.N.Y. July 16, 2020); *see also*

*Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022); *Marshall v. Randall*, 719 F.3d 113, 118-19 (2d Cir. 2013).  Relevant here, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff [must] show that his prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1335.  Plaintiff has failed to allege facts in support of each element of a malicious prosecution claim, including that the criminal prosecution for trespass ended without a conviction.  (*See* Dkt. No. 1; *see also Thompson*, 142 S. Ct. at 1335.)  The undersigned accordingly recommends that the Court dismiss Plaintiff's second cause of action with leave to amend.  *See id.*

Finally, because the Complaint fails to allege any facts reflecting that Norman Button, Jane Doe, and John Doe were involved in any violation of Plaintiff's rights under 28 U.S.C. § 1983, those individuals should be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Cipriani v. Buffardi*, No. 9:06-CV-0889 (LEK) (DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (collecting cases).

## IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court conclude Plaintiff's false arrest claim against Trooper Koss survives initial review and requires a response. (*See* Dkt. No. 1.)  The undersigned also recommends that the Court dismiss Plaintiff's malicious prosecution claim against ADA Rodgers with leave to amend.  *See id.*  The undersigned further recommends that Norman Button, Jane Doe, and John Doe be dismissed because the Complaint fails to allege they violated Plaintiff's rights under 28 U.S.C. § 1983.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**,[3] and it is

**RECOMMENDED** that Plaintiff's false arrest claim against Trooper Koss **survive *sua sponte* review**; and it is further

**RECOMMENDED** that Trooper Koss be **ORDERED** to file a formal response to Plaintiff's Complaint (Dkt. No. 1) as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff's malicious prosecution claim against ADA Rodgers be **DISMISSED WITH LEAVE TO AMEND**, and it is further

**RECOMMENDED** that Norman Button, Jane Doe, and John Doe be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

---

[3] Plaintiff should note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[4]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

**<u>PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: May 31, 2022
       Syracuse, New York

                                    Thérèse Wiley Dancks
                                    United States Magistrate Judge

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. [*]

[*]        Judge John G. Koeltl of the United States District
        Court for the Southern District of New York, sitting
        by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns*,
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee*, 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 519296
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Allen ALBERGOTTIE, Plaintiff,

v.

NEW YORK CITY; Martin Horn, N.Y.
City Doc. Commissioner; Glenn Goord,
N.Y. State, Docs. Commissioner; Robert J.
Derrison, N.Y. State Div. of Parole, Defendants.

No. 08 Civ. 8331(SHS).
|
Feb. 15, 2011.

*OPINION & ORDER*

SIDNEY H. STEIN, District Judge.

**\*1** *Pro se* plaintiff Allen Albergottie brings this action pursuant to 42 U.S.C. § 1983 challenging the imposition and enforcement of post-release supervision ("PRS") by the New York State Department of Correctional Services (the "State DOCS"), by the New York State Division of Parole, and by the New York City Department of Corrections (the "City DOC"). Specifically, Albergottie contends that the imposition of PRS by anyone other than a judge violates the Due Process Clause of the Fourteenth Amendment by depriving defendants in criminal proceedings of their constitutional right to be sentenced by a judge. Further, Albergottie alleges that his detention pursuant to a parole warrant was illegal and a violation of his Fourth Amendment rights. Defendants Glenn Goord, former Commissioner of State DOCS, and Robert J. Derrison, former Chairman of the State Division of Parole (collectively the "State Defendants"), have moved pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants New York City and Martin Horn, Commissioner of New York City Department of Corrections (collectively the "City Defendants"), have moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings.

Because this Court finds that (1) the State Defendants are entitled to qualified immunity and (2) that Albergottie has failed to state a plausible claim for relief against the City Defendants, the defendants' respective motions to dismiss the complaint are granted.

## I. BACKGROUND

### A. *Factual Background*
The following facts are taken from the complaint and are assumed to be true for the purposes of this motion. On November 11, 2001, Albergottie was arrested for burglary, assault, and possession of burglar's tools. (Compl.¶ 1.) Albergottie pled guilty and received a five-year determinate sentence. (Compl.¶ 1.) During his plea allocution and sentencing, the judge did not inform Albergottie that a mandatory period of PRS would follow his determinate sentence. (Compl.¶ 1.) Albergottie's commitment sheet also did not reflect the imposition of the mandatory PRS. (Ex. A to Compl.) [1]

[1]     Albergottie appends several documents to his complaint. The "Sentence and Commitment" sheet will be referred to as "Exhibit A," and the March 4, 2008 "State of New York—Board of Parole Preliminary Violation Hearing Decision and Summary" will be referred as "Exhibit B."

Albergottie was conditionally released from incarceration and placed on PRS on February 10, 2006. (Pl.'s Mem. in Opposition to Motion to Dismiss I ¶ 27.) Prior to his release, Albergottie met with a parole counselor, and it is at this time that Albergottie alleges he first learned of his mandatory period of PRS. (Compl.¶ 2.) Although Albergottie objected to the PRS, he was told that "if I didn't sign [the PRS] papers that I will not be allowed to go home on my conditional release date." (*Id.*) Albergottie filed a grievance, which was "never answered," and for two years he reported to his parole officer. (*Id.* ¶¶ 2–3.)

Two years later, on February 14, 2008, Albergottie was arrested for forgery. (Compl.¶ 3.) He posted bail, but was not released because a parole warrant had been lodged by the State Division of Parole. (Compl. ¶ 3; Ex. B to Compl.) Subsequently, Albergottie filed a petition for a writ of habeas corpus, which the New York Supreme Court, Bronx County, granted on May 2, 2008. (Compl.¶¶ 3–4.) Although the parole warrant was vacated, Albergottie remained detained because the bail on his forgery charge was "raised from $3,500 to $10,000." (*Id.* ¶ 4.)

### B. *Legal History*

**\*2** In 1998, the New York legislature enacted "Jenna's Law," which requires the imposition of PRS "as a mandatory follow-up period to a determinate sentence for violent felony offenders." *State v. Myers,* 22 Misc.3d 809, 812–13, 870 N.Y.S.2d 757 (Sup.Ct. Albany Cty 2008); *see also* N.Y. Penal § 70.45 (1999). For several years after the enactment, if the sentencing judge did not impose PRS at sentencing, the State DOCS imposed it administratively. *See Myers,* 22 Misc.3d at 811, 812–13 (noting that the State DOCS estimated that it had administratively imposed PRS on over ten thousand defendants). New York appellate courts have also consistently upheld the administrative imposition of PRS in the absence of the imposition of PRS by the sentencing court. *See Collins v. State,* 69 A.D.3d 46, 50, 887 N.Y.S.2d 400 (4th Dep't 2009) (citations omitted).

Then, on June 9, 2006, the United States Court of Appeals for the Second Circuit held that the State DOCS' imposition of extra-judicial sentences of PRS violated federal law. *Earley v. Murray,* 451 F.3d 71, 76 (2d Cir.2006). Following the Second Circuit's decision in *Earley,* three of the four appellate departments in New York continued to uphold the administrative imposition of PRS. *Myers,* 22 Misc.3d at 813 n. 9 (listing several cases from the first, third, and fourth appellate departments (citations omitted)).

In April 2008, the New York Court of Appeals decided *Garner v. N.Y. State Dep't Corr. Servs.,* 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008) and *People v. Sparber,* 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008), which held that PRS imposed by anyone other than a judge violated New York state law. *See Garner,* 10 N.Y.3d at 362. The New York state legislature subsequently passed Corrections Law § 601–d to "provide a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered post-release supervision terms." *People v. Williams,* 14 N.Y.3d 198, 206, 899 N.Y.S.2d 76 (2010).

### C. *Procedural History*

In August of 2008, Albergottie filed this section 1983 complaint alleging that defendants violated his constitutional rights when they administratively imposed and enforced a five-year term of PRS on him. (Compl.¶¶ 1–5.) He seeks compensatory and punitive damages for the two years he served on supervised release. (*Id.* ¶ 5.)

## II. STANDARD OF REVIEW

### A. *Rule 12(b)(1) Standard*

On a motion to dismiss a complaint for lack of subject matter jurisdiction, " 'the party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.' " *Sharkey v. Quarantillo,* 541 F.3d 75, 82 (2d Cir.2008) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). While the court must accept as true all material facts alleged in the complaint, in resolving challenges to subject matter jurisdiction, the court may look beyond the pleadings in order to satisfy itself that it has the authority to hear the action. *See Filetech S.A. v. Fr. Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998) (quotation and citation omitted).

### B. *Rule 12(b)(6) and 12(c) Standards*

**\*3** For purposes of a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) or a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). To survive either motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible [its] complaint must be dismissed." *Id.*

When considering a Rule 12(b)(6) or 12(c) motion to dismiss against a *pro se* plaintiff—such as Albergottie—this Court may consider as true facts taken not just from plaintiff's complaint and the accompanying exhibits but also plaintiff's opposition memoranda. *Baskerville v. Blot,* 224 F.Supp.2d 723, 728 (S.D.N.Y.2002); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002). Moreover, a *pro se* plaintiff's complaint must be liberally construed to raise the strongest claims that the allegations suggest. *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Phillip v.. Univ. of Rochester,* 316 F.3d 291, 293–94 (2d Cir.2003); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). "However, a *pro se* party's bald assertions of a constitutional violation without any factual predicate

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

cannot survive even the most liberal standard accorded a Rule 12(b)(6) motion." *Baskerville,* 224 F.Supp.2d at 728 (citations omitted).

## III. ANALYSIS

### A. *The Motions to Dismiss*
The State Defendants assert a broad array of arguments to dismiss the complaint as to them. Because the State Defendants filed a motion to dismiss pursuant to Rule 12(b)(1) challenging this Court's jurisdiction, the Court will consider the jurisdictional issue first. The Court will then assess the State Defendants' argument that Albergottie's claim is barred by the statute of limitations. The Court will finally turn to the State Defendants' assertion of qualified immunity. Because the Supreme Court has " 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation,' " *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)), and because the State Defendants are correct that they are entitled to qualified immunity from being sued based on plaintiff's claims, the Court need not assess the remaining arguments raised in support of the Rule 12(b)(6) motion to dismiss. [2]

[2]    Although the State Defendants have attached documents to their Rule 12(b)(6) motion to dismiss, the Court is not considering them because the qualified immunity defense can be analyzed "based on facts appearing on the face of the complaint." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004).

#### 1. Eleventh Amendment
**\*4** Albergottie asserts claims for damages against Goord, the former Commissioner of State DOCS, and Derrison, the former Chairman of the State Division of Parole, in their individual capacities. [3] The State Defendants argue that the Eleventh Amendment bars these claims because Albergottie is seeking damages for the operation of Penal Law § 70.45, which makes PRS mandantory for certain defendants, and this makes the state the real party in interest. (State Defs.' Mem. in Support of Motion to Dismiss at 22–23.)

[3]    Although Albergottie seeks damages against Derrison in his official capacity, *see* Pl.'s Opp. I ¶ 13, the Eleventh Amendment bars suits for

damages alleged against a state official in his official capacity, *see Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.1993) (citing *Hafer v. Melo,* 502 U.S. 21 (1991)). Therefore, Albergottie's claims for damages alleged against Derrison in his official capacity are dismissed.

The Court disagrees. Albergottie is not arguing that Penal Law § 70.45 itself violates constitutional rights; rather, Albergottie argues that the enforcement by the State Defendants was in violation of his constitutional rights. (Compl.¶¶ 1–5). The Eleventh Amendment does not bar claims alleged against a state official in his individual capacity even though the official is acting in accord with state law. *See Hafer,* 502 U.S. at 28–29 (holding that the immunity available to state officials for individual capacity suits for retrospective damages is qualified immunity); *Berman Enters.,* 3 F.3d at 606 (stating that even though the state will reimburse state officials, the payment "does not make the state the real party in interest").

Therefore, the Rule 12(b)(1) motion to dismiss the claims against both State Defendants Derrison and Goord in their individual capacities is denied. [4]

[4]

    In his complaint Albergottie only seeks money damages, but in his extensive opposition papers, Albergottie seeks "injunctive" and "declaratory" relief. (Pl.'s Opp. I ¶¶ 5, 15). This Court declines to construe Albergottie's opposition papers as an amended complaint, and also notes that either relief appears unnecessary because Albergottie's PRS was vacated. *See People v. Albergottie,* Index No. 6805–01 (Sup.Ct. N.Y. Cty Aug. 4, 2008).

#### 2. Statute of Limitations
As a threshold matter, the State Defendants argue that Albergottie's claim accrued in 2002 and is barred by the applicable three year statute of limitations. (State Defs.' Supp. at 3.) Because there is no federal statute of limitations for actions arising under section 1983, federal courts apply the statute of limitations period for personal injury actions in the forum state, which in New York is three years. *Ormisten v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997). However, the date of accrual is governed by federal law. *Id.*

The State Defendants contend that Albergottie's claim accrued in 2002 because Albergottie either knew or had reason to know that PRS had been imposed administratively when the State DOCS received him into custody in September

2002. However, courts in this circuit have uniformly held that pursuant to *Heck v. Humphrey* the claims of plaintiffs such as Albergottie do not accrue until the underlying sentence is invalidated, or, in this case, until Albergottie's petition for writ of habeas corpus was granted. *See, e.g., Ruffins v. Dep't of Corr. Servs.,* 701 F.Supp.2d 385, 393–97 ("plaintiff's § 1983 cause of action did not accrue until September 17, 2008, when the state court re-sentenced him without any PRS term"); *Santiago v. Fischer,* No. 09–CV–1383, 2009 WL 3852001, at *3 (E.D.N.Y. Nov. 18, 2009) (plaintiff's section 1983 claim did not accrue until his habeas petition was granted); *Scott v. Fischer,* No. 07 Civ. 11303, 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009) (same), *affirmed by* 616 F.3d 100 (2d Cir.2010); *cf. Heck v. Humphrey,* 512 U.S. 477, 489–90 (1994) (section 1983 claim for damages which questions the validity of a conviction or sentence does not "accrue until the conviction or sentence has been invalidated"). Because plaintiffs such as Albergottie were under no obligation to "bring a habeas petition to vacate [their] PRS" when they were admitted into DOCS custody, *Scott,* 2009 WL 928195, at *4, the accrual date of Albergottie's claim is not in 2002 but rather in 2008 when his habeas petition was granted, (Compl.¶¶ 3–4).

**\*5** Albergottie filed this complaint in 2008, less than three years after his habeas petition was granted, and, therefore, his claim is not time barred.

### 3. Qualified Immunity

The doctrine of qualified immunity protects governmental officials " 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson,* 129 S.Ct. at 815 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To determine whether a right is "clearly established," courts in this Circuit assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) (internal quotations and citations omitted). Qualified immunity applies regardless of whether an official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law or fact." *Pearson,* 129 S.Ct. at 815. Moreover, whether the law was clearly established must be evaluated at the time of the conduct at issue. *See Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir.2003).

The State Defendants contend that they are entitled to qualified immunity for their imposition and enforcement of Albergottie's PRS because the administrative imposition of extrajudicial PRS did not violate clearly established constitutional rights pre- or post-*Earley.* In June 2006, the Second Circuit held that the administrative imposition of PRS by the State DOCS, when not imposed by a judge, violated the constitutional rights of criminal defendants. *See Earley,* 451 F.3d at 76. The Second Circuit has subsequently held that the imposition and enforcement of extra-judicial PRS by the State Defendants pre-*Earley* did not violate a clearly established constitutional right. *See Scott v. Fischer,* 616 F.3d 100, 107 (2d Cir.2010) ("[W]e conclude that it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause."). Therefore the State Defendants are entitled to qualified immunity for the imposition and enforcement of extra-judicial PRS during the pre-*Earley* period.

> This Court has also previously held that post-*Earley,* but prior to the New York State Court of Appeals decision in *Garner* and *Sparber* in April 2008, state officials are entitled to qualified immunity. *See Hardy v. Fischer,* No. 08 Civ. 2460, 2010 WL 4359229, at *2–3 (S.D.N.Y. Nov. 3, 2010). Because there was "considerable confusion in the New York State courts as to the applicability of the Second Circuit's decision," a reasonable state official would not realize that the continued enforcement of extra-judicial PRS would violate a constitutional right. *Id.* Therefore the State Defendants are entitled to qualified immunity for the post-*Earley* but pre-*Sparber/ Garner* enforcement of extra-judicial PRS.

**\*6** Although PRS had already been imposed on Albergottie when he was released in February 2006, the State Defendants continued to enforce Albergottie's conditions of PRS after the New York Court of Appeals decided *Sparber* and *Garner* in April 2008. Albergottie was detained by the City pursuant to the parole warrant until May 2008 when the Supreme Court, Bronx County, granted Albergottie's habeas petition and vacated the warrant. (Compl. ¶¶ 3–4; Pl.'s Opp. I at ¶ 10.) Thus, this Court must determine whether a reasonable state official would have known that the continued enforcement of the already imposed extra-judicial PRS violated a clearly established constitutional right after *Sparber* and *Garner.*

The Court finds that the defendants are entitled to qualified immunity because until June 30, 2008, a reasonable State DOCS or parole official would not realize that he had a duty or authority to seek the correction of a procedurally

deficient but otherwise valid and statutorily required period of PRS. Even though the New York Court of Appeals had declared the administrative imposition of extra-judicial PRS in violation of New York State law, the *Sparber* court stated that this was "only a procedural error, akin to a misstatement or clerical error, which the sentencing court could easily remedy." *Sparber,* 10 N.Y.3d at 466. It was only when the New York state legislature passed Correction Law § 601–d, on June 30, 2008, that the State Defendants were under any duty to "notify sentencing courts that PRS had not been properly imposed in certain cases ... and to have these defendants returned to the original sentencing courts for modification of their sentences." *Williams,* 14 N.Y.3d at 208; *see also Scott,* 616 F.3d at 108 n. 5 (stating that it was not until the passage of Corrections Law § 601–d that an "affirmative duty" was imposed upon government officials to seek resentencing); *cf.* Penal § 70.45.

Because there was no duty to affirmatively revoke, alter enforcement, or seek the correction of extra-judicial PRS sentences, a reasonable state official would not realize that the continued enforcement of a the statutorily required period of PRS was in violation of clearly established constitutional rights. This Court finds that the State Defendants are entitled to qualified immunity for the period between April 2008 and June 30, 2008. [5]

[5]    In his first memoranda in opposition, Albergottie included Brian Fischer, the Commissioner of State DOCS appointed on January 1, 2007, as if he were a defendant. (Pl.'s Opp. I ¶ 11.) He is not; if he were, he would similarly be entitled to qualified immunity.

Therefore, all claims against the State Defendants are dismissed. [6]

[6]    Albergottie has another basis for his request for damages based on the unconstitutional imposition of PRS because the trial court also failed to advise Albergottie of the mandatory PRS in his plea colloquy. (Pl.'s Opp. I ¶ 25.) In 2005, the New York Court of Appeals found that a trial court's failure to discuss the mandatory period of PRS was a violation of a defendant's procedural due process rights, *People v. Catu,* 4 N.Y.3d 242, 244–45, 792 N.Y.S.2d 887, 825 N.E.2d 1081 (2005), but the court found that this breach of the trial court's constitutional duty requires the trial

court to vacate the plea, *id.* A reasonable State DOCS or parole official would not understand that the continued enforcement of an otherwise valid period of PRS was in violation of a releasee's constitutional rights because the trial court had violated the releasee's procedural due process rights during a plea colloquy held in 2002, some three years prior to the decision in *Catu.* Therefore, the State Defendants would be entitled for qualified immunity.

### B. *Motion for Judgment on the Pleadings*

#### 1. *Heck v. Humphrey Favorable Termination Rule*

Albergottie seeks damages for the detention, from February until May 2008, by the City DOC based on an "illegal parole warrant." (Pl.'s Mem. in Opposition to Motion to Dismiss II ¶¶ 9.) The City Defendants argue that *Heck v. Humphrey* bars Albergottie's section 1983 action for damages because they claim that this period of detention was credited toward Albergottie's sentence for a separate forgery offense and that sentence has not been invalidated.

**\*7** *Heck v. Humphrey* states that a section 1983 claim for damages which questions the validity of an conviction or a sentence does not arise until the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. 477–78. However, before instituting his suit for damages flowing from the detention pursuant to the parole warrant, Albergottie filed a petition for a writ of habeas corpus, that petition was granted, and the parole warrant was vacated. (Compl. ¶ 3–4; Pl.'s Opp. I ¶¶ 10, 31.) For the purposes of *Heck v. Humphrey,* Albergottie has shown that his detention was invalid and his section 1983 claim for damages related to the detention is cognizable. At most, the jail time credit limits any damages available to Albergottie, but it does not raise a bar to Albergottie's claim.

#### 2. *False Arrest, False Imprisonment, and Malicious Prosecution Claims*

The City Defendants argue that Albergottie cannot sustain his false arrest, false imprisonment, or malicious prosecution claims arising from his detention in 2008 pursuant to a parole warrant because that detention is privileged. To establish a false arrest or imprisonment claim under either New York State law or section 1983, a plaintiff must show that: "(1) the

defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Santiago,* 2009 WL 3852001, at *7 (citing *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) ("The elements of a claim for false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." (quoting *Hygh v. Jacobs,* 961 F.3d 359, 366 (2d Cir.1992))). Only the fourth element —whether the confinement was privileged—is at issue here, and the Court agrees that the confinement was privileged.

If the confinement is made pursuant to an arrest warrant that is "valid on its face," *Santiago,* 2009 WL 3852001, at *7, and supported by probable cause, then the confinement is privileged and a plaintiff's false arrest or imprisonment claim is foreclosed, *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); *Broughton v. State of New York,* 37 N.Y.2d 451, 457–58, 373 N.Y.S.2d 87, 335 N.E .2d 310 (1975).

Albergottie was confined on the basis of a parole warrant, and in New York the issuance of parole warrants are supported by "reasonable cause:"

> If a parole officer having charge of a ... person released to post-release supervision ... shall have reasonable cause to believe that such a person lapsed into criminal ways or company, or has violated one or more conditions of ... post-release supervision ... a warrant may be issued for the retaking of such person for his temporary detention ....

**\*8** N.Y. Exec. § 259–i(3)(a)(i). A parole warrant supported by reasonable cause is sufficient to privilege the arrest and confinement even if the parole warrant is later declared invalid. *See Hardy,* 701 F.Supp.2d at 612–613 (finding that compliance with N.Y. Exec. § 259–i(3)(A)(i) is sufficient to privilege the arrest and imprisonment "even if the PRS was wrongly-imposed"); *Santiago,* 2009 WL 3852001, at *7 ("Furthermore, [a]n arrest based on a facially valid warrant, which results in an unlawful detention, does not give rise to an action for false arrest even though the warrant was erroneously or improperly issued." (quotation and citation

omitted)); *cf. Alvardo v. City of New York,* 482 F.Supp.2d 332, 337 n. 2 (S.D.N.Y.2007).

There are no allegations that the parole warrant was facially invalid or non-compliant with N.Y. Exec. § 259–i(3)(A)(i). In fact, Albergottie was originally detained at the City DOC because of his arrest for forgery. (Compl.¶ 3.) The arrest for forgery is more than sufficient to establish reasonable cause for a parole warrant, and without any allegations that the warrant was facially invalid or lacking in reasonable cause, Albergottie's detention on the parole warrant was privileged and he fails to state a plausible claim for false arrest or imprisonment.

For similar reasons, Albergottie's claim for malicious prosecution also fails. To establish a claim for malicious prosecution, a plaintiff must show: "(i) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (ii) the termination of the proceeding favor of the plaintiff; (iii) the absence of probable cause for the criminal proceeding; and (iv) actual malice." *Knowles v. Johnson,* No. 08 Civ. 4741, 2010 WL 1050973, at *4 (E.D.N.Y, Mar. 23, 2010) (citing *Rothstein v. Carriere,* 373 F.3d 275, 292–94 (2d Cir.2004)). Although Albergottie has shown that the proceeding against him for the parole violation was terminated in his favor when his petition for writ of habeas corpus was granted, (Compl. ¶ 4; Pl.'s Opp. I ¶ 10), he has alleged no facts to dispute a finding of reasonable cause or to dispute the finding of probable cause by the parole board in Albergottie's preliminary hearing, (Ex. B to Compl.). Because Albergottie bears the burden to prove that the prosecution was not supported by probable cause, he fails to state a claim for malicious prosecution. *See Broughton,* 37 N.Y.2d at 457–49 (finding that the plaintiff bears the burden to show want of probable cause to support a malicious prosecution claim).

Therefore, Albergottie's claims for false arrest, false imprisonment, and malicious prosecution are dismissed.

### 3. *Personal Involvement*

To state a claim pursuant to section 1983, a plaintiff must allege (1) that the challenged conduct taken by a person acting under color of state law and (2) that that conduct deprived the plaintiff of a right secured by the Constitution or federal law. *See Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005); *see also Santiago,* 2009 WL 3852001 at *7. Because section 1983 "imposes liability for 'conduct which subjects, or causes to be subjected' the complainant to a deprivation of rights secured by the constitution and laws," *Williams v. Smith,*

781 F.2d 319, 323 (2d Cir.1985) (quoting *Rizzo v. Goode,* 423 U.S. 362, 370–71 (1976) (additional quotations and citations omitted)), the " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award for damages under § 1983,' " *Schomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009) (quoting *Colon v. Coughlin,* 58 F.3d 863, 873 (2d Cir.1995)).

**\*9** Although the personal involvement of a defendant is a question of fact, *see Williams,* 781 F.2d at 323, Albergottie has failed to allege any facts regarding the involvement of City Defendant Horn in the imposition or enforcement of PRS from September 2002, when Albergottie was received into state custody, (Compl.¶ 2), until February of 2008, when city officials detained him pursuant to the state parole warrant, (Compl.¶ 5). Therefore, any claim based on the alleged unconstitutional imposition or enforcement of PRS from September 2002 to February 2008 is dismissed as to City Defendant Horn for lack of personal involvement.

Albergottie also asserts a claim of supervisory liability against Horn because he is the policymaker "who trains, supervises, and implements policy, practice, and custom to the employees," and that such polices, practices, and training included the execution of parole warrants at the "behest of the New York State Division of Parole" without investigation to determine the validity of parole warrants. (Pl.'s Mem. in Opposition to Motion to Dismiss II ¶¶ 4, 7.) However, Albergottie fails to establish supervisory liability because the City Defendants' conduct was privileged. If the detention of Albergottie pursuant to a facially valid parole warrant is privileged, and Albergottie alleges no other facts to support a claim of supervisory liability, then Albergottie fails to allege a plausible claim for failure to properly supervise and prevent constitutional violations.

Therefore, any claim alleged against Horn for supervisory liability is dismissed.

*4. Claims Against New York City*
Albergottie has asserted claims against New York City on the grounds that the city "repeatedly failed to make any meaningful investigation" into the parole violation charges against him, and failed to train city employees how to execute parole warrants. (Pl.'s Opp. II ¶ 6.) To sustain a claim for

relief pursuant to section 1983 against a municipal defendant, a plaintiff must show (1) the existence of an officially adopted policy or custom and (2) a causal connection between the custom or policy and the deprivation of a constitutional right. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978); *City of Canton v. Harris,* 489 U.S. 378, 388–89 (1989); *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992). Because Albergottie does not provide any allegations or facts that New York City's policy, custom, or inadequate training caused, or was the moving force behind, the alleged constitutional violations, the City's motion is granted.

Even under the most liberal interpretation, the complaint does not assert plausible allegations that any officially adopted policy, custom, or inadequate training caused constitutional violations. The only allegations against New York City relate to the detention of Albergottie at a city jail pursuant to a parole warrant, (Pl.'s Opp. I ¶ 29; Pl's Opp. II ¶ 1), which is privileged, *see supra* Part III.B.2.

**\*10** Because the detention is privileged, and there are no further allegations that New York City policies caused constitutional violations, the Court grants the City Defendants motion to dismiss plaintiff's *Monell* claim against New York City.

*C. State Claims*
To the extent plaintiff attempts to assert any remaining state law claims, the Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3).

**III. CONCLUSION**
The Court dismisses all claims against the defendants because the State Defendants are entitled to qualified immunity, the actions of the City Defendants are privileged, and Albergottie otherwise fails to state a plausible claim for relief. Accordingly, the complaint is dismissed.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 519296

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-00435-BKS-TWD    Document 6    Filed 05/31/22    Page 18 of 32

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

2014 WL 11350821

Only the Westlaw citation is currently available.

NOT FOR PRINT OR ELECTRONIC PUBLICATION

United States District Court, E.D. New York.

Stephen ARRINGTON, Plaintiff,

v.

CITY OF NEW YORK, and Joseph Garofalo
individually and in his capacity as a Police Officer of
the New York City Police Department, Defendants.

14-CV-3023 (ARR) (VMS)

|

Signed December 19, 2014

|

Filed 12/22/2014

**Attorneys and Law Firms**

Jon Martino, Villa Poinciana, Boca Raton, FL, Lillane G.
Mair, Carter & Associate Attorneys, New York, NY, for
Plaintiff.

Liza Jin Kyung Sohn, New York City Law Department, New
York, NY, for Defendants.

*OPINION & ORDER*

ROSS, United States District Judge

**\*1** Plaintiff, Stephen Arrington, was arrested and prosecuted
on assault charges after an altercation in which he claims
to have fired a single, non-lethal gunshot in self-defense.
Following the dismissal of all criminal charges against him,
plaintiff commenced the present suit against defendants,
Officer Joseph Garofalo and the City of New York.
He raises claims under 42 U.S.C. § 1983 for false
arrest, malicious prosecution, malicious abuse of process,
fabrication of evidence, emotional distress, and violation
of the Second Amendment. Defendants have moved to dismiss
the complaint for failure to state a claim. Resolution of the
motion largely turns on the duty of police officers to undertake
further investigation before arresting a suspect who admits to
all the elements of a crime, but claims he acted in self-defense.
For the reasons set forth below, defendants' motion is granted.

**BACKGROUND**

On October 20, 2013, plaintiff, a former correction officer
for the New York City Department of Correction, was in
a car with his fiancée, his two daughters, and a friend of
one of the daughters. First Amended Compl. ("Compl."),
Dkt. # 11, ¶¶ 11, 17–18, 21. As they were approaching the
friend's residence in Queens, New York, they saw a young
man violently assaulting a young woman on the street. *Id.* ¶
21. After parking in front of the residence, they continued to
observe the assault, *id.* ¶¶ 23–24, and soon thereafter plaintiff
exited the vehicle in order to take a closer look. *Id.* ¶ 30.

Before moving toward the crowd that had gathered around the
assailant and his victim, plaintiff removed his pistol from a
leg holster and placed it in his coat pocket. *Id.* ¶¶ 32, 35–36,
58. At the time, he had a concealed carry permit that allowed
him to carry a concealed weapon outside of his home. *Id.* ¶ 12.

Soon after plaintiff had joined the other observers of the
altercation, the assailant ceased his assault and shouted at
the crowd to "mind ... [their own] business." *Id.* ¶ 37. The
assailant began to move away from crowd, and as he passed
by plaintiff, the two exchanged words. *Id.* if 39. Plaintiff
asked the assailant why he was "beating on a female." *Id.*
The assailant repeated that plaintiff should "mind [his own]
business" or he would be "shot." Id The assailant then
proceeded to leave the area. *Id.* ¶ 40.

Before plaintiff had an opportunity to return to his car,
however, he heard the assailant call to a group of three
or four other young men, *id.* ¶ 42, and the group of men
immediately began moving toward plaintiff. *Id.* ¶ 44. As the
group converged upon him, plaintiff took a defensive stance.
*Id.* ¶¶ 49–51. The original assailant spoke first, again telling
plaintiff that "he would be shot." Id if 53. A second individual
repeated the threat and, at the same time, lifted his shirt to
retrieve a 9 millimeter handgun from his waistband. *Id.* ¶ 55.
As the man reached for his weapon, it slid from his waistband
down his pant leg. *Id.* ¶ 57. At that moment, plaintiff fired a
shot from the pistol he still had in his coat pocket. *Id.* ¶ 58.
The shot may have grazed the original assailant. *Id.* ¶ 62. The
group of young men immediately fled. *Id.* ¶ 63.

**\*2** Plaintiff returned to his car and drove one block away
from the scene of the altercation. From there, he telephoned
the police to report the incident. *Id.* ¶ 64. When the police
arrived at plaintiff's location, plaintiff went back to the scene

2014 WL 11350821

of the shooting with Officer Garofalo and explained to him what had occurred, including the circumstances that prompted plaintiff to fire his pistol in self-defense. *Id.* ¶ 65. Shortly thereafter, Officer Garofalo arrested plaintiff. *Id.* ¶ 66. The police confiscated plaintiff's weapon, his concealed carry permit, and his coat with the bullet hole in the pocket. *Id.* ¶¶ 60, 68, 128.

At the police precinct, plaintiff provided a written statement to the police in which he related the events that preceded his arrest. *Id.* ¶¶ 82, 89. With respect to the individual with the 9 millimeter handgun, plaintiff wrote: "[A]nother one from the group ran up to me raising his shirt as if to retrieve a weapon and asked do you want to get shot? At that point I felt he was to[o] close for me to retreat or reason with [him] because he was reaching for his weapon. I then discharged one round from my firearm through my jacket pocket." Mr. Arrington's Written Self-Defense Statement ("Written Statement"), attached as Ex. 5 to Decl. in Supp. of Pl.'s Papers in Opp'n to Defs.' Mot. to Dismiss, Dkt. # 25; *see* Compl. ¶ 82. [1]

[1]   In deciding a 12(b)(6) motion to dismiss, a court can consider "documents incorporated in [the complaint] by reference" as well as documents considered "integral to the complaint" by virtue of the complaint's heavy reliance "upon [the documents'] terms and effect[s]." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002) (internal citations and quotation marks omitted). Plaintiff refers to (and, at times, quotes from) the written statement he prepared for the police, Compl. ¶¶ 82, 89, 119, 131; the criminal complaint against him, *id.* 69, 84–86, 103, 118–1 19, 131–33, 137; and the letter revoking his concealed carry permit, *id.* ¶¶ 78, 180–81. The court considers each of these documents in deciding defendants' motion.

Officer Garofalo relied on plaintiff's written statement when preparing the criminal complaint against him. He acknowledged plaintiff's self-defense claim and reproduced in the complaint the portion of plaintiff's written statement quoted above. Criminal Court Complaint ("Criminal Compl."), attached as Ex. E to Decl. of Liza Sohn in Supp. of Defs.' Mot. to Dismiss, Dkt. # 20; *see* Compl. ¶ 119. The complaint did not incorporate any oral statements that plaintiff may have made to Officer Garofalo. Although plaintiff's arrest charges included attempted murder and criminal possession of a weapon, *id.* ¶ 66, the complaint

addressed violations of only New York Penal Law ("NYPL") 120.10–1 (assault in the first degree), NYPL 120.05–1 (assault in the second degree), and NYPL 120.05–2 (assault in the second degree involving a deadly weapon). Compl. 70–72.

On March 7, 2014, the grand jury declined to indict plaintiff on any charges, and a judgment of dismissal was entered on March 10, 2014. *Id.* ¶¶ 91–92.

Nine days later, plaintiff received a letter stating that his concealed carry permit had been revoked. *Id.* ¶ 78. Although plaintiff alleges that the revocation of the permit was "based squarely upon the underlying criminal charges that had been dismissed," Compl. ¶ 181, the full grounds for revocation provided in the March 19, 2014 letter were as follows: (1) "The facts and circumstances surrounding your arrest on 10/20/2013 for assault in the 1st degree, attempted murder, and criminal possession of a weapon"; (2) "Failure to notify the License Division of that arrest"; (3) "Open felony criminal case"; (4) "Active order of protection which prohibits your possession of firearms"; and (5) "Failure to comply with the 10/23/2013 directives of the License Division." Notice of Determination, attached as Ex. F of Supplemental Decl. of Liza Sohn in Further Supp. of Defs.' Mot. to Dismiss, Dkt. # 22.

**\*3**  Following the revocation of his concealed carry permit, plaintiff commenced the present action against Officer Garofalo and the City of New York. He alleges that Officer Garofalo is liable under 42 U.S.C. § 1983 for false arrest, malicious prosecution, malicious abuse of process, fabrication of evidence, and emotional distress. He further alleges that the City of New York is liable under § 1983 for malicious prosecution, malicious abuse of process, and the violation of plaintiff's Second Amendment right to bear arms. Defendants have moved to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 555–56. A court

2014 WL 11350821

is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**B. Claims against Officer Garofalo**

**1. False arrest**

A § 1983 claim for false arrest, asserting a deprivation of the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same" as a claim for false arrest under New York state law, *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). To prevail on a false arrest claim, a plaintiff must establish that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (internal quotation marks omitted). Probable cause is a complete defense to a false arrest claim. *Weyant,* 101 F.3d at 852.

Probable cause to arrest exists where an officer has " 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006) (quoting *Weyant,* 101 F.3d at 852). "Once officers possess facts sufficient to establish probable cause, ... [t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989). The law does not require an officer "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997). Indeed, to do so "would put an unfair burden on law enforcement." *Krause,* 887 F.2d at 372. Pertinently here, the law also does "not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier,* 316 F.3d 128, 135–36 (2d Cir.2003).

There are two limited scenarios, however, in which an individual's claim of innocence or assertion of a defense will negate probable cause. The first arises where an arresting officer knows or is deliberately indifferent to facts that bear directly on the arrestee's culpability. "[A]n officer may not

disregard plainly exculpatory evidence," *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir, 2006), and an "officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks,* 316 F.3d at 135. In *Jocks,* for instance, the court of appeals considered whether the defendant officer was entitled to judgment as a matter law on the issue of probable cause to arrest the plaintiff for assault. At trial, the plaintiff testified that he had thrown a telephone handset at the defendant off-duty police officer only after the defendant pointed his weapon at the plaintiff without identifying himself as a law enforcement officer. *Id.* at 132. Because, under the plaintiff's version of events, the defendant officer was necessarily aware of the plaintiff's valid self-defense claim, the court of appeals held that the jury could have properly found the officer liable for false arrest. *Id.* at 136. Similarly, in *Diop v. City of New York,* the court considered whether to grant summary judgment to the defendants on the ground that the defendant officer had probable cause to arrest the plaintiff for reckless driving. No. 1:13–CV825, 2014 WL 4958623, at *5 (S.D.N.Y. Aug. 21, 2014). According to the plaintiff, after the defendant officer observed the plaintiff driving recklessly, the plaintiff pulled his car alongside the officer's marked police vehicle and shouted to the officer that he had been robbed. *Id.* The officer then observed three men flee the plaintiff s vehicle while the plaintiff remained, begging, "Catch them, they rob[bed] me!" *Id.* at *2. The plaintiff explained to the officer that he had been ordered to drive at knife-point and asked that the officer observe a knife cut on his neck that had been made by one of the robbers. *Id.* Finding that the defendant officer "was or should have been aware of certain facts indicating that [the plaintiff's reckless driving] was justified" under New York law, the court denied the defendants' summary judgment motion. *Id* at *5.

**\*4** The second scenario, more relevant to the present case, arises where an arresting officer is aware of facts or circumstances that cast doubt upon a suspect's culpability such that further investigation is necessary before the officer has probable cause to arrest. In such a case, " 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." ' *Wong v. Yoo,* 649 F.Supp.2d 34, 60 (E.D.N.Y.2009) (quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996)). [2]

[2]   Although this principle was first set forth in the context of malicious prosecution claims, *see Colon v. City of New York,* 455 N.E.2d 1248, 1250 (N.Y.1983), courts have incorporated it into their analysis of false arrest claims as well. *See Kilburn*

Case 5:22-cv-00435-BKS-TWD   Document 6   Filed 05/31/22   Page 21 of 32

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

*v. Vill. of Saranac Lake,* 413 Fed.Appx. 362, 363–64 (2d Cir, 2011); *Diop,* 2014 WL 4958623, at *4; *Foster v. Diop,* No. 11–CV–4731, 2013 WL 1339408, at * *11 (E.D.N.Y. Mar. 31, 2013); *Sankar v. City of New York,* 867 F.Supp.2d 297, 306 (E.D.N.Y.2012); *Rodriguez v. City of New York,* No. 08–CV–04173, 2012 WL 1059415, at *7 (E.D.N.Y. Mar. 28, 2012).

For instance, although an arresting officer ordinarily is allowed to rely upon "information ... received from a putative victim [of] or an eyewitness" to a crime as the basis for probable cause, further investigation may be necessary if "the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern,* 268 F.3d 65, 70 (2d Cir.2001). For this reason, the court in *Sankar v. City of New York* held that where "a bitter prior relationship exists [between the accused and the complainant] and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." 867 F.Supp.2d at 306 (internal citations, quotations marks, and original emphasis omitted). In the circumstances of that case, where the defendant officer knew of the contentious relationship between the plaintiff and his landlord, the landlord's allegation that he had been assaulted by the plaintiff was insufficient to establish probable cause. *Id.*

Similarly, where an arresting officer's own observations at the scene of a crime are in tension with the accusations against a suspect, further investigation may be necessary to establish probable cause for an arrest. In *Wong v. Yoo,* for example, the plaintiff challenged the constitutionality of his arrest following a physical altercation between the plaintiff and two other individuals, including an off-duty police officer. 649 F.Supp.2d 34, 47 (E.D.N.Y.2009). Maintaining that his actions were taken in self-defense, the plaintiff testified that when the two arresting officers arrived on the scene, one attacker "had his foot on [the] plaintiff s neck" and another "had his knee on [the plaintiff's] back." *Id.* at 60. Further, several witness testified that the "plaintiff was dazed, had sustained cuts and tears to his body and clothing, and was visibly bleeding and spitting up blood and teeth." Id. The court ruled that, "[c]rediting [the] plaintiff's version of events, a reasonable fact-finder could determine that [the alleged attackers'] postures upon the officers' arrival, [the] plaintiff's visible injuries, the lack of any threat of immediate harm, and the presence of eyewitnesses eager to provide statements in [the] plaintiff's favor were circumstances that ... required further investigation into whether probable cause to arrest

[the] plaintiff for assault was negated by the justification of self-defense." *Id.*

**\*5** Ultimately, however, the circumstances in which an officer has a duty to investigate an exculpatory defense prior to making an arrest remain narrow. The cases discussed above leave undisturbed the proposition that a self-defense claim that is simply "consistent with the facts alleged" will not, on its own, vitiate probable cause, *Panetta,* 460 F.3d at 395, and the mere fact that "an investigation might have cast doubt upon the basis for the arrest" is equally insufficient. *Curley,* 268 F.3d at 70. Moreover, a plaintiff will have difficulty arguing that a reasonable officer would have investigated further without showing that further investigation was in fact possible. *Compare Wong,* 649 F.Supp.2d at 60–61 (holding that "the [alleged] presence of eyewitnesses eager to provide statements in plaintiff's favor" weighed against finding existence of probable cause as a matter of law), *with Kilburn,* 413 Fed.Appx. at 363–64 (bolstering holding that officers had probable cause to arrest plaintiff notwithstanding plaintiff's claim of innocence by finding that "it is unclear what additional investigative steps would have been fruitful"), *and Pettus v. City of New York,* No. 10–CV–1442, 2011 WL 4458901, at *8 (E.D.N.Y. Aug. 23, 2011) (finding that "[n]o reasonable person would have believed further investigation necessary to establish probable cause to arrest" because, *inter alia,* the plaintiff had "not even identified the additional investigative steps he believe[d] the officers should have taken").

Here, plaintiff argues that the self-defense claim he made to Officer Garofalo negated any probable cause that the officer had to arrest him for assault. The question at this stage in the litigation is whether, assuming the truth of plaintiff s factual allegations and drawing all inferences in his favor, the pleadings support the inference that a reasonable officer would have credited plaintiff s self-defense claim and conducted further investigation prior to arrest. *See Foster,* 2013 WL 1339408, at *12 (finding complaint supported inference that the defendant officer should have investigated further before arresting plaintiff where it included "the vital allegation that [the officer] represented to plaintiff and plaintiff's family that she knew [the] accusations [providing the basis for arrest] were not true"); *Conte v. Cnty. of Nassau,* No. 06–CV–4746, 2008 WL 905879, at *10 (E.D.N.Y. Mar. 31, 2008) (finding complaint supported inference that defendants should have doubted veracity of accusations against plaintiff where it alleged that plaintiff had given documents to defendants prior to arrest that, in the court's

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

Case 5:22-cv-00435-BKS-TWD    Document 6    Filed 05/31/22    Page 22 of 32

words, "provided irrefutable evidence of his innocence"); *McDermott v. City of New York,* No. 94CV2145, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995) (dismissing false arrest claim where complaint alleged "no factual basis upon which [the arresting officer] should have questioned [the] credibility [of a witness to an alleged assault] other than her friendship with" the family of the victim, a relationship that "alone is insufficient to undermine the reasonableness of" the officer's reliance on the witness's statements to police).

Here, plaintiff's complaint fails to allege any facts that would distinguish plaintiff's self-defense claim from any other "unverified claim[ ] of justification" that arresting officers are under no duty to investigate before making an arrest. *Jocks,* 316 F.3d at 136. Plaintiff does not allege that Officer Garofalo had any "awareness of the facts" corroborating plaintiff's self-defense claim, *id.* at 135, and nothing described in the complaint would suggest that the officer's observations at the location of plaintiff's arrest would have obligated him to pursue "further investigation into whether [there was] probable cause to arrest plaintiff." *Wong,* 649 F.Supp.2d at 60. Indeed, prior to calling the police, plaintiff admittedly left the scene of the alleged crime, in doing so, separated himself from members of the crowd who could have corroborated his self-defense claim. Even though plaintiff alleges that he later returned to the scene of the shooting with Officer Garofalo, plaintiff does not set forth any investigatory steps that Officer Garofalo should have taken prior to making the arrest, nor does he allege that any witness remained at the scene. Instead, plaintiff simply insists in conclusory fashion that the officer was obligated to credit his "valid and credible claim of self-defense." Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl. Mem."), Dkt. # 25, at 14.

**\*6** The only fact plaintiff has pleaded that arguably corroborates his claim to Officer Garofalo that he acted in self-defense is that he himself summoned the police and, in admitting to the shooting, supplied the probable cause for his own arrest. While this fact may be helpful to a plaintiff in some cases, on its own, and in the circumstances of this case, it is insufficient to render plaintiff's arrest unlawful.

Plaintiff attempts to find support for a contrary holding in *Levy v. City of New York,* 935 F.Supp.2d 575 (E.D.N.Y.2013). There, the plaintiff claimed that he and his wife were threatened by another couple in a public park. *Id.* at 582. In the midst of the dispute, the plaintiff telephoned the police and requested assistance. Id The threats continued, and the plaintiff grabbed a paring knife from a picnic basket in order

to protect his wife. Id The plaintiff never used the knife and, after the altercation ended, he once against called the police. *Id.* After officers arrived on scene, the plaintiff was arrested and charged with criminal possession of a weapon and disorderly conduct. *Id.* at 583–84. The charges were later dismissed, and the prosecutor "apologized for the behavior of the arresting officers." *Id.* at 584.

In considering the defendants' summary judgment motion, the court held that, under the plaintiff's version of events, there were "facts [that] should have suggested to Defendants that Plaintiff acted out of justifiable self-defense ... thus negating a finding of probable cause." *Id.* at 587. These included the fact that the plaintiff "clearly explained" to the arresting officer that he grabbed the paring knife in order to defend his wife; that the plaintiff "placed the knife in his pocket before speaking to the police"; and that the plaintiff "was the person who requested police assistance in the first place." *Id.*

While these facts suggest some similarities between *Levy* and the present case, important differences remain. The plaintiff in *Levy* first called the police prior to the commission of his alleged crime, a circumstance in which a reasonable officer could conclude there was less incentive for Levy to lie about the threats he and his wife were facing than here, where plaintiff reported the threats he had faced only after the alleged assault he committed in front of a crowd of people. Further, Levy never left the scene of the alleged crime. *Id.* at 582, Yet, prior to arresting Levy, the officers did not question the other couple, also still present at the scene. Id. at 587. The other man stated that the plaintiff had pulled out a knife, but gave no "indication that [Levy] used the knife in a threatening or otherwise unlawful manner." Id. As such, the minimal information received from the purported victim did not implicate the plaintiff in any crime, and there were clear investigative steps that the defendant officers could have taken, but did not, prior to making the arrest. For these reasons, *Levy* is not analogous to this case.

In sum, the facts alleged in plaintiff's complaint support a finding that Officer Garofalo had probable cause to arrest plaintiff for assault, and plaintiff's false arrest claim must therefore be dismissed.

### 2. Malicious Prosecution

In New York, the elements of a malicious prosecution claim are " '(1) the initiation of a proceeding [by the defendant], (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice.' " *Savino v. City of New York,* 331

2014 WL 11350821

F.3d 63, 72 (2d Cir.2003) (quoting *Colon,* 455 N.E.2d at 1250). "In the context of malicious prosecution, probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Jackson v. City of New York,* 939 F.Supp.2d 235, 250 (E.D.N.Y.2013) (internal citation and quotation marks omitted). While this standard "is slightly higher than the standard for false arrest cases," *Stansbury v. Wertman,* 721 F.3d 84, 95 (2d Cir.2013), " 'a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest.' " *McKay v. City of New York,* No. 13 Civ. 2948, 2014 WL 3700594, at *9 (S.D.N.Y. July 24, 2014) (quoting *Carson v. Lewis.* 35 F.Supp.2d 250, 263 (E.D.N.Y.1999)).

**\*7** Here, plaintiff has not identified any facts that Officer Garofalo uncovered, or even should have uncovered, following plaintiff's arrest that would undercut a finding of probable cause for his prosecution. In fact, plaintiff himself treats probable cause to arrest and probable cause to prosecute as indistinguishable. Pl. Mem. 12. As a result, because plaintiff's own complaint supports the existence of probable cause, plaintiff's malicious prosecution claim must also be dismissed.

### 3. Malicious Abuse of Process

A malicious abuse of process claim will lie against a defendant " 'who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.' " *Savino,* 331 F.3d at 76 (quoting *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994)). The crux of the claim is the collateral objective element, which requires proof that the defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* at 77 (differentiating between an "improper purpose" and an "improper motive"). Seeking to convict an individual out of vengeance or in retaliation is insufficient, as "the goal—convicting the [individual]—is a legitimate use of process." *Douglas v. City of New York,* 595 F.Supp.2d 333, 344 (S.D.N.Y.2009); see *Hoffman v. Town of Southampton,* 893 F.Supp.2d 438, 449 (E.D.N.Y.2012), *aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town of Southampton,* 523 Fed.Appx. 770 (2d Cir.2013) ("[E]ven if the defendants had a vindictive or a vicious motive in bringing the additional charges against plaintiffs to coerce a disposition in the

criminal prosecution, the objective of all of the actions was still to prevail on the prosecution ... rather than to achieve some objective collateral to the prosecution itself. Under these circumstances, ... no collateral objective has been alleged.").

Here, plaintiff argues that Officer Garofalo's collateral objective in commencing the prosecution of plaintiff was "to punish [him] for exercising his Second Amendment right to bear arms." Compl. ¶ 150; *see* Pl. Mem. 18. Even if true, this threadbare allegation only speaks to Officer Garofalo's motivation in initiating criminal charges against plaintiff. The complaint does not allege that plaintiff's prosecution aimed to achieve some objective "outside the legitimate ends of the [legal] process." *Savino,* 331 F.3d at 77 (granting summary judgment against plaintiff who claimed that defendants arrested him in retaliation for the embarrassing media attention that plaintiff, a fellow police officer, had generated). For this reason, the malicious abuse of process claim must be dismissed.

### 4. Fabrication of evidence

Fabrication of evidence claims are actionable under § 1983 as a violation of a plaintiff's right to a fair trial. *Ricciuti,* 124 F.3d at 130. Such a claim requires that " 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.' " *Hoyos v. City of New York,* 999 F.Supp.2d 375, 392 (E.D.N.Y.2013) (quoting *Jovanovic v. City of New York,* 486 Fed.Appx. 149, 152 (2d Cir.2012)).

Here, plaintiff cannot even establish the basic element of fabrication. Plaintiff's claim rests on the allegation that Officer Garofalo "purpose[ly] suppressed [plaintiff's] telling police that he actually saw the firearm in the waistband" of the young man at whom plaintiff shot, Compl. ¶ 154, by writing in the criminal complaint that the young man "ran up to [plaintiff] raising his shirt *as if* [to] retrieve a weapon." *Id.* ¶ 119. Yet, the allegedly deficient portion of the criminal complaint that Officer Garofalo prepared quotes directly from plaintiff' s written statement. Criminal Compl. Plaintiff himself wrote that "another [individual] from the group ran up to [him] raising his shirt as if to retrieve a weapon" and he "felt [the other individual] was to[o] close for me to retreat or reason with [him] because [that individual] was reaching for his weapon." Written Statement. The verbatim reproduction of both of these statements in the criminal complaint cannot, in any way, be characterized as "false evidence fabricated" by

Arrington v. City of New York, Not Reported in Fed. Supp. (2014)

2014 WL 11350821

Officer Garofalo. *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir.2000). Plaintiff's fabrication claim thus fails.

### 5. Emotional distress

**\*8** Plaintiff s final claims against Officer Garofalo must be dismissed because claims for negligent, reckless, or intentional infliction of emotional distress are not cognizable under § 1983. A § 1983 action "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer,* 63 F.3d at 119. While plaintiff insists that his "claims for distress are founded purely upon federal law," Pl. Mem. 20, plaintiff nowhere identifies the constitutional provision or federal statute that secures the right that plaintiff posits. Indeed, no such right exists. *See Rojas v. Alexander's Dep't Store, Inc.,* 654 F.Supp. 856, 859 (E.D.N.Y.1986).

Plaintiff attempts to locate this right in two cases that discuss how emotional distress factors into a plaintiffs damage award. Pl. Mem. 20–21 (discussing *Memphis Cmty. School Dist. v. Stachura,* 477 U.S. 299 (1986), and *Tretola v. Cnty. of Nassau,* No. 08–CV–3225, 2014 WL 1494371 (E.D.N.Y. Apr. 16, 2014)). Yet, in both cases, emotional harm was the result of the violation of a federal right, not the violation itself. In *Memphis,* the plaintiff's damages, emotional and other, were caused by First Amendment and due process violations. 477 U.S. at 313. In *Tretola,* the damages were caused by the plaintiff's false arrest and malicious prosecution. 2014 WL 1494371, at \*1. The mere fact that "compensatory damages may include ... mental anguish and suffering" does not transform freedom from mental anguish and suffering into a freestanding federal right. *Memphis.* 477 U.S. at 307 (internal quotation marks omitted). As such, plaintiff s emotional distress claims must be dismissed.

### C. Claims against the City of New York

In addition to the claims against Officer Garofalo, plaintiff asserts § 1983 claims against the City of New York for malicious prosecution, malicious abuse of process, and the violation of plaintiff's Second Amendment right to bear arms in self-defense.

For a § 1983 claim against a municipality to survive a motion to dismiss, a plaintiff must plead the substantive elements of the constitutional violation as well as facts permitting a finding that the violation "resulted from a municipal custom or policy." *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (E.D.N.Y.2003) (discussing requirements of municipal

liability under § 1983 as set forth in *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978)). Because the court has already dismissed plaintiff's malicious prosecution and malicious abuse of process claims against Officer Garofalo, dismissal of these claims against the City of New York is warranted as well. *See Matthews v. City of New York,* 889 F.Supp.2d 418, 445 (E.D.N.Y.2012).

Plaintiff's Second Amendment claim against the City of New York must also be dismissed. At the outset, plaintiff makes no attempt to demonstrate his entitlement under the Constitution to carry a concealed weapon outside of his home. He fails to grapple with any relevant caselaw and ignores the fact that the right to bear arms in public is much more limited in scope than the right to bear arms inside one's home. *See Kachalsky v. Cnty. of Westchester,* 701 F.3d 81, 100 (2d Cir.2012) (recognizing that the Supreme Court's Second Amendment cases "have arisen only in connection with prohibitions on the possession of firearms in the home," but assessing constitutionality of gun licensing statute on "assumption" that the Second Amendment has "*some* application in the very different context of the public possession of firearms" (emphasis in original)). Plaintiff also ignores the Second Circuit's more specific determination that no constitutional issue arises when New York prohibits a concealed carry permit to an individual who asserts a "generalized desire to carry a concealed weapon to protect [his] person and property," but fails to "demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Id.* at 86 (internal citations and quotation marks omitted) (considering facial and as-applied challenges to NYPL § 400.00(2)(f), which provides that a concealed carry permit will be granted to "any person when proper cause exists for the issuance thereof").[3] The court cannot identify any tenable Second Amendment claim in plaintiff's pleadings or in the sparse sentences he devotes to the issue in his opposition papers.

[3] New York law also allows individuals who fall within one of four specific classes of people to obtain a license to carry a concealed handgun in certain circumstances outside of the home. NYPL § 400.00(2)(b)-(e). These provisions are irrelevant to the case at hand.

**\*9** Nevertheless, the court need not pursue an uncharted constitutional analysis, as dismissal of plaintiff's Second Amendment claim is plainly warranted on the ground that

Case 5:22-cv-00435-BKS-TWD    Document 6    Filed 05/31/22    Page 25 of 32
Arrington v. City of New York, Not Reported in Fed. Supp. (2014)
2014 WL 11350821

plaintiff has pleaded no facts supporting the inference that a municipal policy or custom caused the constitutional violation alleged here. Plaintiff states only that "[t]he NYPD, acting pursuant to official municipal policy, as to gun licensing, claims to act pursuant to a policy that allows it to act on behalf of the City of New York to confiscate and destroy firearms and terminate gun licensing privileges where one has been charged with a crime, even where said charges are later thrown out." Compl. ¶ 113. Yet, this conclusory statement simply parrots the details of plaintiff's own case and is insufficient to protect plaintiff's claim from dismissal. *See* *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) ("The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."); *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."). While plaintiff's failure to identify an explicit policy is not fatal to his claim, the complaint must set forth at least circumstantial evidence of the existence of a policy, such as "evidence

that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" of similar constitutional violations. *Id*. The complaint provides no basis for allowing plaintiff's Second Amendment claim against the City of New York to proceed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. As plaintiff has agreed that his amended pleading is his "last and strongest complaint" in this proceeding, Conference Tr., Sept. 10, 2014, at 2, no further leave to amend is warranted. The complaint is dismissed in its entirety, and the Clerk of Court is directed to close this case

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2014 WL 11350821

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4041448
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Miguel RAMOS, Plaintiffs,

v.

The CITY OF NEW YORK et al., P.O. Lenonoxan
Samerson, and P.O. "John" Gandolfi, in their
official and individual capacity, Defendants.

1:18-cv-04938 (ALC)
|
Signed 07/16/2020

**Attorneys and Law Firms**

Mustapha Lakpene Ndanusa, Davis Ndanusa Ikhlas & Saleem
LLP, Brooklyn, NY, for Plaintiffs.

Stephen Matthew Suhovsky, New York City Law
Department, New York, NY, for Defendants City of New
York, P.O. "John" Gandolfi.

Stephen Matthew Suhovsky, New York City Law
Department, New York, NY, for Defendant P.O. Lennoxan
Samerson.

**OPINION AND ORDER**

ANDREW L. CARTER, JR., United States District Judge:

**INTRODUCTION**

*1 On June 7, 2019, Plaintiff Miguel Ramos filed a
complaint against the City of New York and two Police
Officers, Lennoxan Samerson and Frank Gandolfi, for false
arrest and malicious prosecution in violation of 42 U.S.C. §
1983; failure to intervene in these constitutional violations;
violations of his state constitutional rights by the same arrest;
and certain other claims that have since been withdrawn.
Defendants moved for summary judgement as to Mr. Ramos's
federal claims.

After careful consideration, Defendants' motion for summary
judgment is GRANTED.

**BACKGROUND**

On the morning of May 16, 2016, Lennoxan Samerson and
Frank Gandolfi were working as plain clothes officers in
Transit District 4 in the New York City Subway. (Defendants'
Responses and Objections to Plaintiff's Statement of Facts
in Opposition to Defendant's Statement of Undisputed Facts
Pursuant to Local Rule 56.1 ("Joint 56.1"), ECF No. 46, ¶¶
1-2, 4.) The Officers began their shift on the Northbound
4, 5, 6 platform at 14th Street – Union Square at sometime
between 7:30 and 9:00 am. (Joint 56.1 ¶¶ 5-7.) Mr. Ramos
was on the subway that day as well.

In the course of their patrol, the Officers saw a man, who
will be referred to as Suspect 1, standing suspiciously on
the Northbound 6 train platform at 14th Street and leering
at women's buttocks. (Joint 56.1 ¶¶ 18-19). Shortly after
boarding the same train as Suspect 1, Officer Samerson saw
Suspect 1 put his body square against the back of a female
passenger and push his groin against her. (Joint 56.1 ¶ 20).
Officer Samerson was not able to catch up with the victim to
speak with her, (Joint 56.1 ¶ 22), and she and Officer Gandolfi
continued to follow Suspect 1 on the train. (Joint 56.1 ¶¶
22-23, 50-51.) The Officers followed Suspect 1 to a new car
on the train, then onto the 42nd Street platform. (Joint 56.1
¶¶ 26-31.)

For his part, Mr. Ramos denies that he crossed paths with
the Officers until directly before his arrest (impliedly denying
that he is Suspect 1). He points to the fact that a metrocard
in his possession at the time of arrest showed an entry at
the 77th Subway Station at 8:06 a.m. and at 42nd Street –
Grand Central Station at 8:06 a.m. (Joint 56.1 ¶¶ 9-10.) In
his view these times are inconsistent with his being Suspect 1;
the Defendants disagree.

However, it is undisputed that Mr. Ramos, the Officers, and a
woman, who will be referred to as A.S., boarded the same car
of an Uptown 6 train at 42nd street. During the ride, A.S. felt
someone touching her buttocks without consent. (Joint 56.1 ¶
33.) Officer Samerson testified that she observed Mr. Ramos
grinding his groin into the buttocks of A.S. (Joint 56.1 ¶ 34.)
Mr. Ramos purports to dispute Officer Samerson's account,
but, as will be discussed in greater length, fails to create a
genuine dispute of fact as to her account.

When A.S. got off the train at the next stop, Officer Samerson followed her and asked her if anything unusual happened on the 6 train. (Joint 56.1 ¶¶ 35-36.) A.S. confirmed that someone had touched her buttocks on the train. (Joint 56.1 ¶ 37.) However, A.S. did not participate in an identification procedure to identify the person who assaulted her. (Joint 56.1 ¶ 42.)

**\*2** Officer Samerson radioed to Officer Gandolfi, who had stayed on the subway with Mr. Ramos. (Joint 56.1 ¶ 38.) On the basis of Officer Samerson's radio, Officer Gandolfi arrested Mr. Ramos. (Joint 56.1 ¶ 39.)

Mr. Ramos was arraigned at New York County Criminal Court and charged with two counts of Forcible Touching and two counts of Sexual Abuse in the Third Degree, to which he plead not guilty. (Joint 56.1 ¶ 45.)

In New York, a person is guilty of Forcible Touching "when such person intentionally, and for no legitimate purpose: forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire...." N.Y. P. L. § 130.52(A)(1). A person is guilty of Sexual Abuse in the Third Degree when "he or she subjects another person to sexual contact without the latter's consent...." N.Y. P. L. § 130.55.

Officer Samerson swore to the facts alleged in the criminal complaint. (Joint 56.1 ¶ 61.) On July 21, 2017, Mr. Ramos's charges were dismissed pursuant to C.P.L. § 30.30 speedy trial provisions. (Joint 56.1 ¶ 46.)

On June 4, 2018, Mr. Ramos filed a complaint against Officers Samerson and Gandolfi, and the City of New York. Therein, Mr. Ramos brought claims for false arrest, excessive force and malicious prosecution in violation of 42 U.S.C. § 1983; deprivation of certain rights secured by Article 1, Section 12 of the New York Constitution; assault and battery; municipal liability by the City of New York; and failure to intervene. Plaintiff subsequently withdrew the excessive force, assault and battery and municipal liability claims. (ECF No. 34 at 2.)

On November 15, 2019, Defendants filed a motion for summary judgment arguing that (1) Plaintiff's false arrest and malicious prosecution claims fail because there was probable cause for his arrest; (2) Plaintiff cannot show the malice element of malicious prosecution; (3) Plaintiff cannot establish the favorable termination element of malicious

prosecution; (4) Defendant Officers are entitled to qualified immunity, and (5) Plaintiff's failure to intervene claim fails as a matter of law. (ECF No. 39.) Defendants also argue that Plaintiff's Fair Trial claim failed. (ECF No. 39 at 17.) Because Plaintiff has disclaimed that he is advancing such a claim, (ECF No. 41 at 21), the Court will not address these arguments. Defendants also argued that were this Court to dismiss the federal claims in this matter, it should not exercise jurisdiction over the remaining state claims. (ECF No. 39 at 24.)

On December 16, 2019, Plaintiff filed an opposition, (ECF No. 41), to which Defendants responded on January 3, 2020, (ECF No. 45).

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. Celotex Corp., 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250. The Court is to believe the evidence of the non-movants and draw all justifiable inferences in their favor, id. at 255, but the non-movants must still do more than merely assert conclusions that are unsupported by arguments or facts, Bellsouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### 1. False Arrest

**\*3** To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show, *inter alia*, that "the defendant intentionally confined him without his consent and without

justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). "[P]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman,* 721 F.3d 84, 89 (2d Cir. 2013).

Probable cause exists when the officers have "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as [p]robable cause does not require absolute certainty." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations and citations omitted). "[I]t is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006).

Here, the question of probable cause turns on the accounts of Officer Samerson and A.S. Officer Samerson believes that she saw Mr. Ramos assault A.S. Defendants put forth Officer Samerson's sworn testimony and notes indicating that she witnessed Mr. Ramos assault A.S. Mr. Ramos, in turn, had to adduce evidence of specific facts that create a genuine issue as to Officer Samerson's account. The Court concludes that Mr. Ramos has not done so.

Mr. Ramos fails to demonstrate a genuine issue of fact as to whether Officer Samerson saw Mr. Ramos inappropriately touch A.S. Mr. Ramos does not, for example, offer his own sworn denial that he committed the assault. Rather, he points to an alleged inconsistency in a diagram of the incident drawn by Officer Samerson. Specifically, he argues that a triable issue arises from the fact that Officer Samerson failed to identify where on the diagram the subway door would be at a deposition years later. According to Mr. Ramos, because "Samerson was equivocal about where the platform would have been" she "could not have been watching Ramos commit the crime alleged because Ramos was on the left side of the train". (ECF No. 41 at 12.)

This attempt to create a triable issue fails. Officer Samerson testified that the purpose of the diagram was "to show where people are standing in relation to one another, that's it." (ECF No. 40-2, Samerson Dep. Tr. 65:5-9.) Consistent with her repeated sworn testimony, the diagram shows that Samerson

was standing behind Mr. Ramos, who was in turn behind A.S. Officer Samerson was unwilling to label one side of the diagram as corresponding to the left or right side of the train because "it's been three years, and I didn't make the diagram of what happened in the train car". (ECF No. 40-2, Samerson Dep. Tr. 66:18-25.) But, when asked where the platform would be on her diagram, Officer Samerson testified that the "platform would have been where everyone is by the door". (ECF No. 40-2, Samerson Dep. Tr. 66:11-16.) That is consistent with her repeated sworn testimony of what she observed that day. Officer Gandolfi and A.S. were shown the same diagram, and to the degree of their knowledge, gave testimony consistent with the fact that Officer Samerson was behind Mr. Ramos who was behind A.S. (ECF No. 41 at 6-8.) This does not create a genuine issue of fact as to the reliability of Officer Samerson's account.

**\*4** As to A.S.'s testimony, Mr. Ramos does not dispute that A.S. told Officer Samerson that someone touched her buttocks on the subway without consent. (Joint 56.1 ¶¶ 37, 43.) Nor has he adduced any evidence that a reasonable officer should have doubted A.S.'s account or found it to lack credibility. Rather, he attempts to cast doubt on the weight to be given A.S.'s account in two ways, both of which fail.

To the extent that Mr. Ramos argues that A.S. not recognizing the inappropriate touching to be a groin creates a material fact as to probable cause, he is wrong. A.S.'s statement confirmed that she had indeed been touched inappropriately and against her will. While what Officer Samerson saw differs from what A.S. felt happening behind her, A.S.'s statement is in no way exculpatory. Rather, she confirmed the gravamen of the charges against Mr. Ramos. *See* N.Y. P. L. § 130.52 (defining Forcible Touching as "when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire."); N.Y. P. L. § 130.55 (defining Sexual Abuse in the Third Degree as when one "subjects another person to sexual contact without the latter's consent....").

Nor is Mr. Ramos's emphasis on the fact that A.S. did not identify him availing. Even without an identification from the victim, Officer Samerson's eye-witnessing of the encounter between A.S. and Mr. Ramos, and A.S.'s statement, are sufficient to support a belief that Mr. Ramos had committed a crime. Officer Gandolfi, who effectuated the arrest, was entitled to rely on Officer Samerson's assessment. *Loria v. Gorman,* 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent

significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.") (Citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).)

Mr. Ramos argues that the question of whether he is Suspect 1 is pivotal in this analysis. "If we accept [his] version of facts that he travelled directly from 14th street to 42nd street without abusing anyone or switching train cars, Samerson must be mistaken about whom she was following." (ECF No. 41 at 9.) But, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). Assuming Mr. Ramos is not Suspect 1, nothing in the record indicates that a mistake of identity by Officer Samerson was unreasonable or in bad faith. To the contrary, Officer Gandolfi testified that Suspect 1 was "wearing the same clothes, same hat, same bag" as Mr. Ramos. (ECF No. 38-2, Ganldolfi's Dep. Tr. 83:11-21.)

Based on the foregoing, the Court concludes there was probable cause for Mr. Ramos's arrest. Because "[t] here can be no federal civil rights claim for false arrest where the arresting officer had probable cause," *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)), Plaintiff's false arrest claim is DISMISSED. In light of this, the Court need not reach the issue of qualified immunity with respect to false arrest.

### 2. Malicious Prosecution

**\*5** To state a § 1983 claim for malicious prosecution, a plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution", and "indictment by a grand jury creates a presumption of probable cause." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). That presumption may be rebutted only "by evidence that the indictment was

procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith' ". *Id.* If there was probable cause for an arrest, "[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), as amended (May 21, 1996).

As discussed above, there was probable cause for Mr. Ramos's arrest. Given the absence of exculpatory evidence or other intervening fact to disturb that probable cause, the Court holds there was probable cause for Mr. Ramos' prosecution as well.

Therefore, Mr. Ramos's claim for malicious prosecution is DISMISSED. In light of this, the Court need not reach the favorable termination and malice elements of malicious prosecution, or qualified immunity.

### 3. Failure to Intervene

In light of the Court's holding that there was probable cause for the arrest and prosecution of Mr. Ramos, his claim for failure to intervene necessarily fails too. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Because the Court concludes Mr. Ramos's constitutional rights were not violated by his arrest and prosecution, there was nothing in which to intervene. This claim is therefore DISMISSED.

### 4. Remaining State Claims

Along with the federal claims just discussed, Mr. Ramos brought claims for violation of his rights under the New York State Constitution. Defendants did not ask this Court to evaluate the state law claims on the merits. Instead Defendants asked that, should the Court dismiss the federal claims, the Court decline to exercise jurisdiction over the remaining state claims.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Seeing nothing

2020 WL 4041448

unusual here, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly, Mr. Ramos's state-law claims are DISMISSED.

**CONCLUSION**

The Defendants' summary judgment motion is GRANTED. The Clerk is directed to terminate the motion and to enter judgment for the Defendants.

**All Citations**

Slip Copy, 2020 WL 4041448

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)
2007 WL 607341

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

 **\*2**  WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    2